Brody A. McBride (CA SBN 270852)
2011 Palomar Airport Road, Suite 101
Carlsbad, CA 92011
(760) 253-1231
brody@brodymcbride.com

Trenton G. Lamere (CA SBN 272760)
122 Mascoutah Avenue
Belleville, IL 62220
(618) 539-2328
trenton@lamerelegal.com

Attorneys for Plaintiffs Clarence Hightower
and Danielle Hightower

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE HIGHTOWER, DANIELLE HIGHTOWER,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, DOES 1-30,<br><br>Defendants. | Case No. **'24CV1152 JAH  MSB**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................3
II. JURISDICTION, VENUE, AND CLAIMS......................................................3
III. PARTIES ............................................................................................................4
IV. FACTS................................................................................................................5
    A. Jail Staff's Deliberate Indifference to Cancerous Tumor Growing in Mr. Hightower's Lung..............................................................................................5
    B. Jail Staff's Deliberate Indifference to Mr. Hightower's Other Serious Medical Needs ...................................................................................................8
    C. Ms. Hightower's Loss of Consortium and Related Damages .......................9
    D. County's Pattern and Practice of Deliberate Indifference ............................9
V. CAUSES OF ACTION ....................................................................................13
    FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 – Violation of Eighth Amendment – Deliberate Indifference to Serious Medical Needs...............13
    SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 – *Monell* Liability............14
    THIRD CAUSE OF ACTION – Bane Act ........................................................16
    FOURTH CAUSE OF ACTION – Negligence .................................................17
    FIFTH CAUSE OF ACTION – Loss of Consortium and Related Damages...18
VI. PRAYER FOR RELIEF..................................................................................19
VII. DEMAND FOR JURY TRIAL.......................................................................20

## I. INTRODUCTION

1. When Plaintiff Clarence Hightower was sentenced to a year in county jail, he knew he had a malignant tumor growing in his right lung.

2. Thus, soon after he was taken into custody, Mr. Hightower filed a request in state court to be temporarily released from jail, so he could get surgery to remove the tumor.

3. At the hearing on Mr. Hightower's request for temporary release, a San Diego Sheriff's Department representative expressly acknowledged that, after reviewing Mr. Hightower's case, "the jail and the medical doctors" had opined surgery was "medically necessary." The state court nonetheless denied Mr. Hightower's request for temporary release and, instead, stated it was up to the Sheriff's Department to treat Mr. Hightower's tumor while he was in custody.

4. It then took jail staff *six* months to get Mr. Hightower into surgery. And once he finally got it, the surgery revealed extensive harm caused by jail staff's delay in treatment.

5. What should have been a surgery to remove a small tumor from Mr. Hightower's lung, followed by a six-to-eight week recovery, ended up requiring the removal of a ten-by-ten centimeter tumor, along with two-thirds of his right lung. The delay in surgery further resulted in extensive post-operative treatment and rehabilitation, which is still ongoing today, nearly a year after the surgery. Mr. Hightower continues to suffer from a significantly decreased lung capacity.

6. Mr. Hightower and wife, Danielle Hightower, now sue the County of San Diego and Does 1-30 for damages, pursuant to 42 U.S.C. § 1983 and California state law.

## II. JURISDICTION, VENUE, AND CLAIMS

7. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, as Plaintiffs assert causes of action arising under 42 U.S.C. § 1983, in addition to California causes of action that arise from the same controversy giving rise to Plaintiffs' federal claims.

8. The Court has personal jurisdiction over all Defendants in this action, as all Defendants are and were, at all times relevant to this complaint, situated, regularly conduct

business, and/or are and were domiciled in the State of California.

9. Venue is proper in this district, as the events giving rise to this action occurred in the County of San Diego, California, which is located within this judicial district.

10. Plaintiffs have complied with the California Government Code requirements to assert state-law causes of action and have, in particular, submitted a tort claim for damages to the County, which the County denied by letter dated January 3, 2024.

## III. PARTIES

11. Plaintiff Clarence Hightower is and was, at all times relevant to this complaint, an individual domiciled in California.

12. Plaintiff Danielle Hightower is and was, at all times relevant to this complaint, an individual domiciled in California.

13. Defendant County of San Diego ("County") is and was, at all times relevant to this complaint, a municipal entity duly organized under California law. The San Diego County Sheriff's Department ("Sheriff's Department") is the chief law enforcement agency for the County. The Sheriff's Department manages and operates the County's jail system and facilities and was, at all times relevant to this complaint, responsible for the policies, procedures, practices, and customs of the County's jail systems and facilities, as well as for the hiring, training, supervision, discipline, actions, and inactions of the County's agents and/or employees working in the County's jail systems and facilities.

14. Defendants Does 1 through 30, inclusive, are persons whose identities, titles, and employment/agency relationships are currently unknown to Plaintiffs; that is, they are currently ignorant of the true names of these persons. These defendants include jail staff, detention officers, medical staff, medical providers, supervisors, employees, agents, contractors, and final policymakers who substantially contributed to the acts and omissions giving rise to the damages claimed herein. These defendants each acted under color of state law, within the scope of their agency and/or employment, and with the full knowledge and consent, either express or implied, of their principal and/or employer. Plaintiffs will seek leave to substitute the true names of these defendants when they learn their true identities.

## IV. FACTS

**A.  Jail Staff's Deliberate Indifference to Cancerous Tumor Growing in Mr. Hightower's Lung**

15. In May 2022, prior to Mr. Hightower being sentenced or taken into custody, a scan for an unrelated back injury revealed he had a 2-by-3 centimeter mass in his right lung.

16. In July 2022, a bronchoscopy and biopsy revealed the mass in Mr. Hightower's lung was not only cancerous, but also blocking 80-90% of the main airway to Mr. Hightower's right lower lung.

17. On December 8, 2022, Mr. Hightower was sentenced to a year in County jail and, that day, Mr. Hightower was taken into custody by the Sheriff's Department at the San Diego Central Jail.

18. Having been out of custody prior to sentencing, Mr. Hightower had been pursuing treatment for the tumor in his lung. Once taken into custody, he no longer had the ability to seek treatment for the tumor on his own. He had to rely on the Sheriff's Department for treatment.

19. Regarding his condition at the time he was taken into custody, Mr. Hightower's primary care physician stated, toward the end of December 2022, "He needs the surgery as soon as possible due to the tumor affecting his breathing," and explained that, "Mr. Hightower has shortness of breath due to location of tumor."

20. Within a few days of being taken into custody, Ms. Hightower wanted to be sure jail medical staff knew about her husband's medical condition and medical needs. On or about December 11, 2022, Ms. Hightower called jail medical staff to discuss her husband's medical needs, including the need for tumor-removal surgery. She even dropped off a set of medical records for jail staff to review (which is fortunate, as it would take jail staff another month to even order a set of outside medical records for Mr. Hightower).

21. Shortly thereafter, Mr. Hightower was transferred to the George Bailey Detention Facility. Ms. Hightower again informed jail medical staff at George Bailey of her husband's medical needs, including his need for tumor-removal surgery. She also repeatedly

contacted jail medical staff to address Mr. Hightower's persistently high blood pressure, at one point even delivering blood pressure medication that Mr. Hightower was prescribed but the jail did not have.

22. At the beginning of January 2023, Mr. Hightower developed a noticeable wheeze he did not previously have. This was likely caused by the tumor growing and further blocking one of his main airways.

23. Around the same time, Mr. Hightower filed a request in state court to be temporarily released from jail, so he could get tumor-removal surgery. In support of his request, Mr. Hightower submitted a letter from a thoracic surgeon stating, among other things, "[T]he surgery is medically necessary as his malignancy will progress and would be life-threatening if left untreated. Surgery is the only potentially curative option for this disease."

24. Multiple court hearings were held in January 2023 to address Mr. Hightower's request for temporary release. At a January 30, 2023 hearing, a representative of the Sheriff's Department expressly acknowledged that, having reviewed Mr. Hightower's medical records, Mr. Hightower had a serious medical need, namely, a cancerous tumor that needed to be surgically removed from Mr. Hightower's right lung.

25. While the state court nonetheless denied Mr. Hightower's request for temporary release, the court expressly stated it was leaving the treatment of Mr. Hightower's tumor up to the Sheriff's Department.

26. Does 1 through 14 are the jail medical staff and/or corrections staff who knew, at one or more points during Mr. Hightower's incarceration from December 2022 through October 2023, that Mr. Hightower required treatment for a cancerous tumor in his lung. Does 1 through 14 had the authority and ability to arrange the surgery needed to remove the tumor in Mr. Hightower's lung, yet these are the defendants whose months-long delay in treating Mr. Hightower's tumor resulted in a drastically worse outcome for Mr. Hightower than if he had been promptly treated.

27. On April 9, 2023, a scan confirmed the tumor in Mr. Hightower's lung had grown another half centimeter in either direction, and the scan detected smaller nodules

around the main mass, in addition to a growth on Mr. Hightower's adrenal glands. Still, no surgery was scheduled to remove the tumor.

28. On July 23, 2023, the San Diego Union Tribune published an article entitled, "'I'm in a little disbelief': Diagnosed with a tumor just before going to jail, La Mesa man fights for long-delayed surgery." <https://www.sandiegouniontribune.com/2023/07/23/im-in-a-little-disbelief-diagnosed-with-a-tumor-just-before-going-to-jail-la-mesa-man-fights-for-long-delayed-surgery/>, (last accessed July 2, 2024). The article's author explained, "[T]he Sheriff's Department has been slow to approve the surgery or even conduct the medical testing and evaluations he needs ahead of the procedure," and that, "Now with the tumor growing larger, Hightower and his family are afraid for his life."

29. Two days later, on July 25, 2023, jail staff took Mr. Hightower to UCSD Hospital for immediate surgery to remove the tumor in his lung.

30. Unfortunately, because of the months-long delay in removing the tumor, Mr. Hightower discovered extensive harm caused by the delay in treatment.

31. The excised tumor measured 10-by-10 centimeters, nearly triple its size when first discovered, or even its size when measured in April 2023.

32. Rather than a less invasive procedure (e.g., video-assisted thoracic surgery), doctors were forced to perform a thoracotomy, fully opening Mr. Hightower's chest to perform the surgery.

33. Doctors, moreover, were forced to remove both the lower and mid lobes of Mr. Hightower's right lung.

34. Mr. Hightower then had to spend ten days at UCSD Hospital, and an additional five days at Paradise Valley Hospital, recovering from the surgery.

35. Once released from the hospital, Mr. Hightower returned to jail, around August 9, 2023, where jail medical and correctional staff continued their pattern of deliberate indifference toward Mr. Hightower's serious medical needs.

36. Mr. Hightower should have, for example, been receiving supplemental oxygen, respiratory therapy, physical therapy, and a sanitary environment following surgery, but he

was not provided with any of these things while in jail. He was, instead, housed in unsanitary conditions and largely ignored. This worsened his recovery efforts and prospects.

37. In August 2023, Mr. Hightower filed a request in state court for early release from jail to pursue the medical care he needed to recover from the major surgery he underwent in July 2023. In October 2023, the state court granted Mr. Hightower's request, and he was released from jail.

38. After his release, Mr. Hightower immediately sought the post-operative medical care he was not being provided in jail, including physical and respiratory therapy.

39. Mr. Hightower's recovery has been long, slow, and painful. It has, moreover, been particularly distressing and frustrating to Mr. and Ms. Hightower that such an arduous recovery could have been avoided had Mr. Hightower received the surgery sooner.

**B.    Jail Staff's Deliberate Indifference to Mr. Hightower's Other Serious Medical Needs**

40. Separate from the tumor he was dealing with in his lung, Mr. Hightower also fell from a top bunk shortly after being taken into custody in December 2022. The fall caused him to suffer severe shoulder and back injuries.

41. He repeatedly reported his back pain to jail staff and requested treatment. In April 2023, a scan confirmed Mr. Hightower had multiple fractured vertebrae. No adequate treatment was provided.

42. Mr. Hightower also repeatedly reported his shoulder pain to jail staff and requested treatment. No adequate treatment was provided. Following his release from jail in October 2023, doctors confirmed Mr. Hightower had suffered a broken clavicle and a torn rotator cuff.

43. Despite repeated requests for treatment, jail staff largely ignored Mr. Hightower's requests, and his serious injuries went largely untreated until after he was released from jail.

44. The delay in treatment of these injuries made them dramatically worse than if they had been treated from the outset.

45. Does 15 through 30 are the jail medical and/or corrections staff who knew, at one or more points during Mr. Hightower's incarceration from December 2022 through October 2023, about his shoulder and/or back injuries. Does 15 through 30 had the authority and ability to arrange the treatment needed for Mr. Hightower's shoulder and back injuries, yet these defendants largely ignored Mr. Hightower's repeated requests to treat his shoulder and back injuries.

**C.    Ms. Hightower's Loss of Consortium and Related Damages**

46. Mr. and Ms. Hightower are and were, at all times relevant to this complaint, a married couple who provided to one another love, companionship, comfort, care, assistance, protection, affection, society, intimate relations, and moral support.

47. As a result of Defendants' deliberate indifference to Mr. Hightower's serious medical needs, he suffered serious injuries that have impacted his relationship with his wife, including his ability to contribute to this relationship as he did before he suffered the injuries alleged herein.

48. Ms. Hightower has suffered a loss of financial support, has been required to provide personal services to care for her husband (such as nursing and medical-care management), has had to hire others to help care for her husband, and has lost earnings by giving up employment to take care of her husband.

49. Ms. Hightower has, therefore, suffered both economic and non-economic damages as a foreseeable result of the injuries her husband suffered.

**D.    County's Pattern and Practice of Deliberate Indifference**

50. Leading to Mr. Hightower's injuries, the County, Sheriff's Department, and Sheriff's Department personnel had established a pattern and practice of ignoring serious medical needs, ignoring information critical to the health and safety of incarcerated people, and failing to protect people in the County's custody and care.

51. The following are examples of such a pattern and practice:

   a. On June 25, 2011, Daniel Sisson died from an acute asthma attack made worse by drug withdrawal. He lay dead for several hours before a fellow

inmate found him. Due to lack of communication between jail staff, jail staff had failed to monitor him. In a subsequent lawsuit, a jury awarded $3 million.

b. In September 2012, Bernard Victorianne suffered for five days from drug overdose because jail staff ignored available (yet unshared) information that he had ingested methamphetamine. Mr. Victorianne was placed in Ad-Seg instead of in a medical unit. He was eventually found dead in his cell from acute drug intoxication. The County settled this case for $2.3 million.

c. In 2014, former U.S. Marine Kristopher NeSmith committed suicide. Last seen alive about 10:00 p.m. one night, a guard noticed a bedsheet fashioned into a rope. The deputy then failed to communicate this information to other jail staff or to call for psychiatric intervention. No other jail staff took any further action. Mr. NeSmith was later found dead, having hung himself. The County settled this case for $250,000.

d. In 2014, Ronnie Sandoval showed obvious symptoms of overdose, yet jail staff did not summon help or treat him for overdose. Nor did jail staff pass on information regarding Mr. Sandoval's condition during the shift change. Mr. Sandoval died from drug intoxication.

e. In 2015, jail personal failed to input critical medical information into JIMS (the jail information database) about Ruben Nunez, leading to Mr. Nunez dying from water intoxication. One of the jail staff testified she did not know how to use JIMS to add "alerts"—i.e., the most critical information regarding an inmate. She testified she was never trained to do this. The County settled this case for $1 million.

f. In 2016, David Collins suffered traumatic brain injuries after falling twice while suffering from a medical condition that caused difficulty walking. Sheriff's Department personnel had just assumed he was drunk and failed to provide any medical care to him. A jury awarded Collins more than $12 million.

g. In 2016, Heron Moriarty committed suicide after jail staff failed to communicate among themselves about the twenty-eight telephone calls his wife had placed to warn jail staff of Mr. Moriarty's suicidal intentions. The County settled this case for $3 million.

h. In 2016, Jason Nishimoto killed himself with a bedsheet on his fourth night in jail, the evening before he was scheduled to see a psychiatrist. His psychiatric conditions were well known to jail staff, who ignored them. The County settled this case for $595,000.

i. In 2018, Paul Silva was killed by Sheriff's Department personnel when they were "extracting" him from a holding cell, where he had been kept with the lights on, and without running water or a bed, for thirty-six hours. Mr. Silva, who struggled with psychosis, died after he failed to immediately comply with Sheriff's Department personnel instructions, and was tased four to nine times while six members of a "tactical team" held him down with a body shield and pressed down on his legs and torso. The County settled this case for $3.5 million.

j. In 2018, Frankie Greer, an army veteran, was put on a top bunk despite Sheriff's Department personnel knowing he had a severe seizure disorder. Mr. Greer had a seizure, fell from his bunk, and sustained traumatic brain injuries. The County settled this case for $7.75 million.

k. In 2018, Colleen Garot was booked into Las Colinas women's jail and, despite patently obvious signs of head trauma, she was largely ignored by Sheriff's Department personnel. After falling from a top bunk, being attacked by another inmate, and being ignored while she had a seizure in a safety cell, Ms. Garot had a debilitating stroke. The County settled this case for $9.5 million.

l. In March 2019, Ivan Ortiz died by suicide while on suicide precautions on the jail's psychiatric floor. Mr. Ortiz suffocated himself with a plastic lunch

       bag (which he should not have had while on suicide precautions). The County settled this case for $1 million.

  m. In November 2019, Elisa Serna died from drug and alcohol withdrawal syndrome because jail staff thought she was faking her symptoms. The County settled this case for $15 million.

  n. In 2020, Tanya Suarez, suffering from drug-induced psychosis, was allowed to pull out her own eyes while Sheriff's Department personnel watched and failed to intervene. The County settled this case for $4.35 million.

  o. In May 2020, Joseph Morton completed suicide after being placed in an isolation cell for five days in a County jail.

  p. In 2021, Lonnie Rupard died in a County jail from malnutrition, dehydration, and pneumonia in the setting of a schizophrenia diagnosis. Jail staff allowed Mr. Rupard to waste away, losing more than a third of his body weight during his time in custody, with him ultimately dying in a trash and feces covered cell. His death was ruled a homicide.

52. Mr. Hightower's injuries were a foreseeable result of this pattern and practice of ignoring serious medical needs, ignoring information critical to the health and safety of incarcerated people, and failing to protect people in the County's custody and care.

53. Despite their awareness of the need to take concrete actions to address a crisis of soaring jail injuries and deaths leading up to Mr. Hightower's incarceration, the Sheriff's Department and the County avoided responsibility, resisted transparency, refused to conduct transparent investigations to determine wrongdoing, refused to hold individual deputies and medical staff accountable, and refused to discipline individual staff members who committed misconduct resulting in inmate injuries and deaths. This created a culture of apathy and impunity among Sheriff's Department staff that, in turn, resulted in the injuries Mr. Hightower complains of here.

54. As a direct and foreseeable result of Defendants' deliberate indifference, negligence, and other wrongful conduct, as described above, Mr. Hightower has suffered

economic damages, including past and future medical bills, lost past and future earning capacity and income, and legal expenses. Mr. Hightower has further suffered non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress.

## V.   CAUSES OF ACTION

**FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 – Violation of Eighth Amendment – Deliberate Indifference to Serious Medical Needs**

**(By Mr. Hightower Against Does 1 Through 30)**

55. All prior paragraphs are incorporated herein by this reference.

56. From December 2022 through October 2023, Mr. Hightower was serving a sentence in the custody of the County.

57. Defendants Does 1 through 30 were, at all times relevant to this pleading, individuals working for the County and the Sheriff's Department under color of state and local law.

58. Defendants Does 1 through 14 knew, at one or more points during Mr. Hightower's incarceration from December 2022 through July 2023, that he had a cancerous tumor that needed to be removed as soon as possible (followed by appropriate post-operative care and rehabilitation).

59. Despite this knowledge, Does 1 through 14 were deliberately indifferent to Mr. Hightower's health and safety by, among other things, delaying for nearly six months the surgery Mr. Hightower needed to remove the tumor in his lung and failing to provide the necessary post-surgery care and rehabilitation Mr. Hightower required after being released back to jail from the hospital following his tumor-removal surgery.

60. Defendants Does 15 through 30 knew, at one or more points during Mr. Hightower's incarceration from December 2022 through July 2023, that he had serious shoulder and back injuries caused from Mr. Hightower's fall from the top bunk in December 2022

61. Despite this knowledge, Does 15 through 30 were deliberately indifferent to Mr.

Hightower's health and safety by largely ignoring Mr. Hightower's shoulder and back injuries.

62. By being deliberately indifferent to Mr. Hightower's serious medical risks and needs, Defendants violated Mr. Hightower's Eighth Amendment right to be free deliberate indifference to his serious medical risks and needs.

63. As an actual and proximate cause of Defendants' deliberate indifference to Mr. Hightower's serious medical risks and needs, Mr. Hightower has suffered economic damages, including past and future medical bills, lost past and future earning capacity and income, and legal expenses. Mr. Hightower has further suffered non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress.

64. Defendants Does 1 through 30 acted (or failed to act) in deliberate and reckless disregard of Mr. Hightower's constitutionally protected rights. Plaintiff thus seeks an award of exemplary damages against these defendants in an amount sufficient to punish their conduct and to deter such conduct in the future.

## SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 – *Monell* Liability
## (By Mr. Hightower Against County)

65. All prior paragraphs are incorporated herein by this reference.

66. As previously alleged, Defendants Does 1 through 30 violated Mr. Hightower's Eighth Amendment right to be free from deliberate indifference to his health and safety. These individual defendants were deliberately indifferent to Mr. Hightower's serious medical risks and needs by, among other things, delaying for nearly six months the surgery Mr. Hightower needed to remove the tumor in his lung, failing to provide the necessary post-surgery care and rehabilitation Mr. Hightower required after being released back to jail from the hospital following his tumor-removal surgery, and largely ignoring Mr. Hightower's shoulder and back injuries.

67. The violation of Mr. Hightower's constitutional rights was the actual and proximate result of a pattern and practice of the County, Sheriff's Department, and Sheriff's Department personnel ignoring serious medical needs, ignoring information critical to the

health and safety of incarcerated people, and failing to protect people in the County's custody and care.

68. For years leading up to Mr. Hightower's injuries, the County's final policymakers were on notice of the foregoing pattern and practice, including the fact that the foregoing pattern and practice was causing a disproportionate number of injuries and deaths to people in County jails. By failing to implement any reasonable policy changes in response to this crisis, the County has remained deliberately indifferent to the constitutional rights of people in the County's care and custody.

69. If the County is going to take into its custody individuals with serious health issues, the County must provide them with adequate care. The County has, however, consistently failed to provide adequate training, supervision, and resources for its jail staff.

70. Despite the frequency with which Sheriff's Department personnel must work with individuals suffering from health issues, for example, jail staff frequently leave such individuals unattended, unmonitored, and—even worse—in dangerous situations with obviously dire consequences.

71. The County's final policymakers failed, in summary, to provide adequate training, supervision, and resources necessary for jail staff to perform their duties without violating the constitutional rights of, not only the people in the County's care and custody, but these individuals' spouses, children, and parents, as well.

72. Even after the County's final policymakers were provided with official reports from multiple oversight organizations, notifying them of the dangerous conditions in County jails, policymakers failed to give jail staff the training, supervision, and resources needed to address the problems raised by these oversight organizations.

73. Mr. Hightower's constitutional rights were violated as an actual and proximate result of the foregoing pattern and practice, and as an actual and proximate result of the County's deliberate indifference to the training, supervision, and resource needs of its jail staff.

74. As a result, Mr. Hightower has suffered economic damages, including past and future medical bills, lost past and future earning capacity and income, and legal expenses. Mr.

Hightower has further suffered non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress.

### **THIRD CAUSE OF ACTION – Bane Act**

### **(By Mr. Hightower Against All Defendants)**

75. All prior paragraphs are incorporated herein by this reference.

76. At all times relevant to this complaint, Defendants Does 1 through 30 were working in the course and scope of their employment by the Sheriff's Department and County.

77. Mr. Hightower was injured as a result of unconstitutional conduct by Defendants Does 1 through 30, including their deliberate indifference to the serious and obvious risks to Mr. Hightower's health and safety in violation of his Eighth Amendment rights.

78. Does 1 through 14 were deliberately indifferent to Mr. Hightower's health and safety by, among other things, delaying for nearly six months the surgery Mr. Hightower needed to remove the tumor in his lung and failing to provide the necessary post-surgery care and rehabilitation Mr. Hightower required after being released back to jail from the hospital following his tumor-removal surgery.

79. Does 15 through 30 were deliberately indifferent to Mr. Hightower's health and safety by largely ignoring Mr. Hightower's shoulder and back injuries.

80. Given the gravity of Mr. Hightower's medical risks and needs, along with the fact that Defendants knew of, and had the ability to arrange treatment for, Mr. Hightower's serious medical needs, their failure to arrange prompt treatment for Mr. Hightower's serious medical needs was a reckless violation of Mr. Hightower's Eighth Amendment rights. That is, Defendants not only violated and interfered with Mr. Hightower's Eighth Amendment rights, but they acted (or failed to act) in reckless disregard of Mr. Hightower's rights. In other words, Defendants knowingly deprived Mr. Hightower of his Eighth Amendment rights through acts that are inherently coercive in a jail setting, such as failing to provide a

treatment plan for an inmate who depends on jail medical care. *See Lapachet v. California Forensic Medical Group, Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018).

81. As a result of Defendants' interference with his Eighth Amendment rights, Mr. Hightower has suffered economic damages, including past and future medical bills, lost past and future earning capacity and income, and legal expenses. Mr. Hightower has further suffered non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress.

82. Because Does 1 through 30 are directly liable for negligence, the County is vicariously liable for all damages arising from his wrongful death, pursuant to California Government Code section 815.2.

83. Because Defendants Does 1 through 30 were employees acting within the scope of their employment by the Sheriff's Department, the County is vicariously liable for the damages arising from the officers' violation of section 52.1. *See* Cal. Gov. Code § 815.2; *see also* Cal. Civ. Code § 52.1(n) ("The state immunity provisions provided in Sections 821.6, 844.6, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer . . . or directly against a public entity that employs a peace officer or custodial officer, under this section.").

84. Mr. Hightower seeks the statutory remedies set forth by sections 52 and 52.1 of the California Civil Code, including treble damages and attorney's fees.

## FOURTH CAUSE OF ACTION – Negligence
**(By Mr. Hightower Against Does 1 through 14 and County)**

85. All prior paragraphs are incorporated herein by this reference.

86. At all times relevant to this complaint, Defendants had a special relationship with Mr. Hightower, in that Mr. Hightower was in their custody and reliant upon their care for his serious medical needs. Defendants Does 1 through 14, therefore, had a duty to use reasonable care in the execution of their duties as either Sheriff's Department corrections and/or medical personnel. This duty of reasonable care included a duty to take reasonable

17
COMPLAINT

action to summon medical care when one knows or has reason to know that an incarcerated person is in need of immediate medical care. *See* Cal. Gov. Code § 845.6.

87.     Defendants Does 1 through 14 breached the foregoing duties by failing to take reasonable action to summon the medical care necessary to promptly treat the cancerous tumor growing in Mr. Hightower's lung. As multiple doctors have opined, removal of the tumor constituted a need for immediate medical care. Defendants knew, or had reason to know, of Mr. Hightower's need for immediate medical care as early as December 2022, yet they failed to summon or arrange the medical care necessary to treat the cancer (i.e., surgery) until July 2023. Mr. Hightower discovered, upon the surgery's conclusion, the extensive harm caused by Defendants' delay in summoning medical care.

88.     As a result of Defendants' breach of their duties, Mr. Hightower suffered economic damages, including past and future medical bills, lost past and future earning capacity and income, and legal expenses. Mr. Hightower has further suffered non-economic damages, including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress.

89.     Because Defendants Does 1 through 14 were acting within the scope of their employment by the Sheriff's Department, the County is also liable for the damages arising from their negligence. *See* Cal. Gov. Code § 815.2; *see also* Cal. Gov't Code § 845.6.

## FIFTH CAUSE OF ACTION – Loss of Consortium and Related Damages
**(By Ms. Hightower Against All Defendants)**

90.     All prior paragraphs are incorporated herein by this reference.

91.     Mr. and Ms. Hightower are and were, at all times relevant to this complaint, a married couple.

92.     As previously alleged, Defendants Does 1 through 14 are liable for the harms resulting from the months-long delay in Mr. Hightower's tumor-removal surgery and subsequent failure to provide adequate post-operative care. These harms substantially interfered with Mr. Hightower's ability to fulfill his marital roles, duties, and obligations.

93.     As previously alleged, Defendants Does 15 through 30 are liable for the harms

resulting from largely ignoring the serious injuries to Mr. Hightower's shoulder and back. These harms substantially interfered with Mr. Hightower's ability to fulfill his marital roles, duties, and obligations.

94. As a result of the interference with Mr. Hightower's ability to fulfill his marital roles, duties, and obligations, Ms. Hightower suffered various harms.

95. Ms. Hightower has suffered a loss of consortium, including the loss of love, companionship, comfort, care, assistance, protection, affection, society, intimate relations, and moral support. She has further suffered a loss of financial support, has been required to provide personal services to care for her husband (such as nursing and medical-care management), has had to hire others to help care for her husband, and has lost earnings by giving up employment to take care of her husband.

96. Because Defendants Does 1 through 30 harmed Ms. Hightower while in the course and scope of their employment by the Sheriff's Department, the County is also liable for the damages arising from their actions (failure to act). *See* Cal. Gov. Code § 815.2; *see also* Cal. Gov't Code § 845.6.

## VI.  PRAYER FOR RELIEF

97. Pursuant to the foregoing causes of action, Plaintiffs pray for the following relief:

    a. on all causes of action, that judgment be rendered in favor of Plaintiffs and against Defendants;

    b. on all causes of action, that compensatory damages (including economic and noneconomic damages) be awarded as permitted by federal and state law, in amounts to be determined at trial;

    c. on the First Cause of Action, that punitive damages be awarded in an amount sufficient to deter and make examples out of these individuals;

    d. on the Third Cause of Action, that treble damages be awarded as permitted by California Civil Code section 52.1(c) and 52(a);

    e. reasonable attorney fees, expenses, and costs of suit pursuant to 42 U.S.C.

§ 1988, California Civil Code section 52.1(i), and all other relevant statutory or case law;

    f.    prejudgment interest; and

    g.    any and all other relief in law or equity to which Plaintiffs may be entitled and which this Court deems just and proper.

## VII.   DEMAND FOR JURY TRIAL

96.   Pursuant to the Seventh Amendment and Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial on all causes of action asserted herein.

Dated: July 3, 2024                                              LAMERE LEGAL PLLC

                                                               By:   *s/Trenton G. Lamere*

                                                               Attorneys for Plaintiffs, Clarence Hightower and Danielle Hightower