UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE HIGHTOWER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.: 24-cv-1152-RSH-MSB <br><br> **ORDER GRANTING DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DISMISS** <br><br> [ECF No. 9] |

Before the Court is a motion to dismiss filed by defendant County of San Diego (the "County"). ECF No. 9. Pursuant to Local Civil Rule 7.1(d)(1) the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants the County's motion.

**I.   BACKGROUND**

**A.   Factual Background**

Plaintiffs Clarence Hightower ("Mr. Hightower") and Danielle Hightower ("Ms. Hightower") (collectively "Plaintiffs") filed a complaint on July 3, 2024 against the County of San Diego and Does 1-30. ECF No. 1. The Complaint alleges the following.

//

1. ***Lung Surgery***

In May 2022, a medical scan of Mr. Hightower's back revealed a 2-by-3-centimeter mass in his right lung. ECF No. 1 ¶ 15. In July 2022, a bronchoscopy and biopsy revealed the mass was cancerous and blocking 80-90% of the main airway to Mr. Hightower's right lower lung. *Id.* ¶ 16.

On December 8, 2022, Mr. Hightower was sentenced to one year in the San Diego County jail and was taken into custody on that same day. *Id.* ¶ 17. At the end of December 2022, Mr. Hightower's primary care physician stated that "[h]e needs the surgery as soon as possible due to the tumor affecting his breathing," and that "Mr. Hightower has shortness of breath due to [the] location of [the] tumor." *Id.* ¶ 19.

On or about December 11, 2022, Ms. Hightower called the County jail medical staff to discuss Mr. Hightower's medical condition and needs and dropped off a set of medical records for the jail staff. *Id.* ¶ 20. Shortly thereafter, Mr. Hightower was transferred to the George Bailey Detention Facility, and Ms. Hightower again informed the jail staff of Mr. Hightower's medical needs, including the need for surgery. *Id.* at ¶ 21.

In early January 2023, Mr. Hightower developed a wheeze. *Id.* ¶ 22. Around the same time, Mr. Hightower filed a request in state court to be temporarily released from County jail to get tumor-removal surgery. *Id.* ¶ 23. In support of his request, Mr. Hightower submitted a letter from a thoracic surgeon stating that "the surgery is medically necessary as his malignancy will progress and would be life-threatening if left untreated. Surgery is the only potentially curative option for this disease." *Id.* After multiple court hearings in January 2023, the state court denied Mr. Hightower's request for temporary release and stated it was leaving the treatment of Mr. Hightower's tumor up to the Sheriff's Department. *Id.* ¶ 25.

On April 9, 2023, a medical scan detected that the tumor in Mr. Hightower's lung had grown a half centimeter in each direction and detected smaller nodules around the main mass as well as growth on Mr. Hightower's adrenal glands. *Id.* ¶ 27.

//

On July 25, 2023, County jail staff transported Mr. Hightower to UCSD hospital for surgery to remove the tumor in his lung. *Id.* ¶ 29. The excised tumor measured 10-by-10-centimeters at the time of removal. *Id.* ¶ 30. The doctors also removed both the lower and mid lobes of Mr. Hightower's right lung. *Id.* ¶ 33.

Mr. Hightower spent ten days at UCSD hospital and five days at Paradise Valley Hospital recovering from surgery before returning to County Jail on or around August 9, 2023. *Id.* ¶¶ 34 – 35.

In August 2023, Mr. Hightower filed a request in state court for early release from jail to recover from the July surgery. *Id.* ¶ 37. In October 2023, the state court granted Mr. Hightower's request, and he was released from jail. *Id.*

### 2.    *Shoulder and Back Injuries*

Shortly after being taken into custody in December 2022, Mr. Hightower fell from a top bunk bed and suffered shoulder and back injuries. *Id.* ¶ 40. Mr. Hightower reported his back pain to jail staff and requested treatment. *Id.* ¶ 41. In April 2023, a scan of Mr. Hightower's back revealed fractured vertebrae. *Id.* Mr. Hightower alleges that he repeatedly reported shoulder pain to jail staff and requested treatment, but that none was provided. *Id.* ¶ 41. In October 2023, following his release from jail, doctors confirmed that Mr. Hightower had suffered a broken clavicle and a torn rotator cuff. *Id.* ¶ 42.

Mr. Hightower alleges that "[t]he delay in treatment of these injuries made them dramatically worse than if they had been treated from the outset." *Id.* ¶44.

### B.    Procedural Background

On July 3, 2024, Plaintiffs filed this action against the County and two categories of Doe defendants. ECF No. 1. The Complaint asserts five causes of action, including federal civil rights claims under 42 U.S.C. § 1983 against Does 1-30 and the County, state law claims for a violation of California's Bane Act against all Defendants, a claim for negligence against Does 1-14 and the County, and a claim for loss of consortium against all Defendants. *Id.* ¶¶ 13–19. On October 3, 2024, the County filed the instant motion to dismiss for failure to state a claim under Rule 12(b)(6). ECF No. 9-1. On October 24, 2024

and October 31, 2024, respectively, the Parties filed their opposition and reply briefs. ECF Nos. 11, 12.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III. ANALYSIS

### A. Doe Defendants

The County seeks to dismiss Plaintiffs' claims against the Doe defendants. Plaintiffs argue that the County does not have the authority to seek dismissal of the claims against unidentified Doe defendants.

Here, the Court agrees there is no indication that the County represents the Doe defendants or has any authority to advance arguments on their behalf. Nevertheless, the

Court has the authority to dismiss claims against the Doe defendants *sua sponte*. *Tabi v. Doe No. 1*, No. EDCV 18-714 DMG(JC), 2019 WL 4013444, at *5 (C.D. Cal. Aug. 26, 2019); *see Staggs v. Doctor's Hosp. of Manteca, Inc.*, No. 2:11-cv-00414-MCE-KJN, 2012 WL 5012268, at *11 (E.D. Cal. Oct. 16, 2012) (*sua sponte* dismissing claim against Doe defendants with leave to amend).

The Court therefore considers whether Plaintiffs' claims against the Doe defendants meet federal pleading standards. *See Lomeli v. Cty. of San Diego*, 637 F. Supp. 3d 1046, 1058 (S.D. Cal. 2022) ("[W]hen a plaintiff has claims against an unknown defendant [in federal court], the plaintiff must still meet federal pleading standards when alleging facts against such defendants."). Specifically, plaintiffs must "allege 'specific facts showing how each particular [Doe] defendant violated [the plaintiff's] rights.'" *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 941 (S.D. Cal. 2022) (quoting *Keavney v. Cty. of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 U.S. Dist. LEXIS 128512, at *9 (S.D. Cal. July 20, 2020)); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."). Here, Plaintiffs do not reference any specific fact as to any particular Doe, and thus do not state a claim against any Doe defendant. *See Segura*, 647 F. Supp. 3d at 941.

### B. Section 1983 Claims

Section 1983 authorizes civil actions for the "deprivation of any rights . . . secured by the Constitution and laws" against a party acting under color of state law. 42 U.S.C. § 1983. The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Further, to prevail on

a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### 1. Eighth Amendment Deliberate Indifference

Defendant argues that Plaintiffs fail to allege sufficient facts to sustain a claim for deliberate indifference. ECF No 9-1 at 3.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Eighth Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Estelle*, 429 U.S. at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

To establish an Eighth Amendment violation, a plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted).

First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she

"knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. While the "failure to give advance notice is not dispositive," prison officials must have "actual knowledge" that a substantial risk of harm exists. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994); *Hooker v. Gomez*, No. 16-7019 HSG, 2019 WL 3973750, at *7 (N.D. Cal. Aug. 22, 2019). Thus, an accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted); *see Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating "mere malpractice, or even gross negligence" in the provision of care fails to state a deliberate indifference claim).

A difference of opinion between a physician and a prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Instead, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012) (overruled, in part, on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)) (quoting *Jackson*, 90 F.3d at 332). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further harm. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). A "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley*, 766 F.2d at 406-07 (finding that the failure of prison authorities to respond to cumulative, repeated demands for surgery did not itself constitute deliberate indifference).

Here, as to the first component of a deliberate ignorance claim, Plaintiffs' allegations regarding the cancerous tumor in his lung, taken as true, are sufficient to state a serious

medical need satisfying the first prong of the analysis. *See McGuckin,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) ("[T]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

As to the second prong, however, Plaintiffs do not adequately allege that Defendants had actual knowledge of a substantial risk of harm to Mr. Hightower sufficient to show deliberate indifference. Plaintiffs repeatedly allege that Defendants "delayed" Mr. Hightower's surgery. But delay is a relative term. Plaintiffs are not alleging that Defendants postponed Mr. Hightower's surgery, but rather that Defendants should have arranged for his surgery earlier—although they do not say when. According to Plaintiffs, Mr. Hightower had been diagnosed with a cancerous mass months before he was taken into custody. It is not clear whether Plaintiffs are alleging that Defendants were obligated to take Mr. Hightower to surgery immediately upon taking him into custody, such that every day he spent in custody before receiving surgery was a "delay" of surgery. Plaintiffs do not allege when surgery became medically necessary or constitutionally required. Having failed to do this, they also have not properly alleged a basis for concluding that it was the unlawful delay—as opposed to the cancerous tumor that preceded his incarceration—that resulted in removal of the "lower and mid lobes of Mr. Hightower's right lung." *Id.* 1 ¶ 32, 33.

Additionally, Plaintiffs fail to allege facts establishing knowledge on the part of Defendants sufficient to rise to the level of deliberate indifference. Plaintiffs allege that Mr. Hightower's primary care physician stated that Mr. Hightower "needs the surgery as soon as possible due to the tumor affecting his breathing," *id.* ¶ 19, but are silent regarding whether or how this was communicated to Defendants. Plaintiffs allege that Ms. Hightower "called jail medical staff to discuss her husband's medical needs, including the need for tumor-removal surgery," *id.* ¶ 20, but do not allege what she said. Plaintiffs similarly allege

that Ms. Hightower "dropped off a set of medical records for jail staff to review," *id.*, but do not indicate what those records contained. Plaintiffs also allege that in early January 2023, Mr. Hightower filed a request in state court for temporary release from jail in order to get surgery, and included a letter from a surgeon stating that "the surgery is medically necessary as his malignancy will progress and would be life threatening if left untreated. Surgery is the only potentially curative option for this disease." *Id.* ¶ 23. Plaintiffs do not allege that the letter, apparently attached to a court filing, provided a timeframe for needed surgery. Plaintiffs further allege that "a representative of the Sheriff's Department expressly acknowledged that . . . Mr. Hightower had a serious medical need, namely, a cancerous tumor that needed to be surgically removed from Mr. Hightower's right lung," *id.* ¶ 24, but do not allege that this representative discussed, or was asked about, the timing of needed surgery.

Plaintiffs also allege that Does 15-30 knew that Mr. Hightower had serious shoulder and back injuries caused from his fall and were deliberately indifferent "by largely ignoring Mr. Hightower's shoulder and back injuries." *Id.* ¶ 61. Plaintiffs do not allege any facts sufficient to show that Defendants ignored Mr. Hightower's shoulder and back injuries nor that they believed he needed attention or treatment that he did not receive. Plaintiffs' own opinion as to the appropriate course of care does not set forth a plausible claim for deliberate indifference. *See Fleming v. Lefevere*, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Finally, Plaintiffs do not allege any specific facts showing how each particular Doe defendant violated Mr. Hightower's rights. *See Segura*, 647 F. Supp. 3d at 941. Plaintiffs fail to state an Eighth Amendment claim and the Court therefore dismisses the Eighth Amendment claims without prejudice.

    **2.**    *Monell*

The City seeks dismissal pursuant to Rule 12(b)(6) of Plaintiffs' *Monell* claim

against it "because Plaintiffs have not alleged facts to show a plausibility that a County policy, custom, or practice delayed Hightower's surgery or otherwise harmed him" and because Plaintiffs do not allege sufficient facts regarding inadequate training and supervision. ECF No. 1 ¶¶ 65–74.

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." *Benavidez v. Cty. Of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

### a. Policy

Plaintiffs allege that "the County, Sheriff's Department, and Sheriff's Department personnel" had a pattern and practice of "ignoring serious medical needs, ignoring information critical to the health and safety of incarcerated people, and failing to protect people in the County's custody and care." ECF No. 1 ¶ 67.

"A plaintiff can establish the second element—policy—in three ways: (1) where a public entity acts 'pursuant to an expressly adopted policy'; (2) where a public entity has a 'longstanding practice or custom,' which may arise when the public entity 'fail[s] to implement procedural safeguards to prevent constitutional violations' or when it fails to adequately train its employees; or (3) where 'the individual who committed the constitutional tort was an official with 'final policy-making authority,' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it." *Sanders v. City of Nat'l City*, No. 20-CV-00085-AJB-BLM, 2020 WL 6361932, at *2 (S.D. Cal.

Oct. 29, 2020) (internal citations omitted); *see Benavidez*, 993 F.3d at 1153 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

"Liability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) ("While one or two incidents are insufficient to establish a custom or policy, we have not established what number of similar incidents would be sufficient to constitute a custom or policy.") (internal citations omitted); *see AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012); *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee."). A plaintiff may sufficiently plead a *Monell* custom or practice claim by showing a history of prior similar incidents which are "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Seever v. City of Modesto*, No. 1:21-cv-01373-JLT-EPG, 2022 WL 17418355, at *3 (E.D. Cal. Dec. 2, 2022); *see also Ochoa v. City of San Jose*, 2021 WL 7627630, at *6 (N.D. Cal. Nov. 17, 2021). To evaluate whether a sufficient pattern of unconstitutional conduct exists, courts typically consider the number of incidents, the factual similarity of those incidents, their timing, and any subsequent action by the defendant. *Seever*, 2022 WL 17418355, at *3; *Turner v. City of Sacramento*, 2022 WL 1608031, at *5 (E.D. Cal. May 20, 2022). The prior incidents of repeated constitutional violations must be substantially similar in character to establish a *Monell* claim. *See McCoy v. City of Vallejo*, No. 219CV001191, 2020 WL 374356, at *4 (E.D. Cal. Jan. 23, 2020). *Seever*, 2022 WL 17418355, at *3; *see Raudelunas v. City of Vallejo*, 2022 WL 329200, at *8 (E.D. Cal. Feb. 3, 2020).

Here, Plaintiffs' broad articulations of an informal policy or practice fail to meet the standard to establish liability under the *Monell* framework. *See AE ex rel. Hernandez*, 666

F.3d at 637; *see Herd v. County of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (dismissing *Monell* claim based on vague 'customs, practices, or policies' because plaintiffs "fail[ed] to allege any facts showing that any of the[] claimed policies or customs actually exist[ed]"). Plaintiffs cite sixteen incidents between 2011 and 2021. ECF No. 1 ¶ 51. These incidents involve, among other things, drug overdoses, suicides, falls from beds, and head trauma. None of the incidents appear to involve a surgery or other medical procedure that were ultimately performed but that alleged should have been performed earlier. In the Court's view, Plaintiffs do not cite any incidents with sufficient "factual similarity" to Mr. Hightower's case, and thus do not show a practice "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *Seever*, 2022 WL 17418355, at *3). Plaintiffs fail show a "custom [that is] so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy," as opposed to "[i]solated or sporadic incidents, [which] will not support *Monell* liability against a municipality." *See id.*; *Cf. Leon*, 2017 WL 3232486, at *3 (granting motion to dismiss *Monell* claim). Plaintiffs' assertion of a broad policy or practice, without more, does not suffice to state a claim for relief. *See AE ex rel. Hernandez*, 666 F.3d at 636 (it is not enough that a plaintiff plead a "bare allegation that the individual officers' conduct conformed to official policy, custom, or practice").

### b. Training

Plaintiffs allege that the County "failed to provide adequate training, supervision, and resources for its jail staff." ECF No. 1 ¶ 69.

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their [sic] employees." *Benavidez*, 993 F.3d at 1153–54 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)); *see City of Canton*, 489 U.S. at 388 (1989)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."

1  *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Flores v. Cty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (internal quotation marks omitted); *see Estate of Mendez*, 390 F. Supp. 3d 1189, No. 1:18-cv-01677-LJO-BAM, 2019 WL 2715615, at *13 (E.D. Cal 2019) ("'[T]he identified deficiency in a local governmental entity's training program must be closely related to the ultimate injury.'") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)).

Plaintiffs fail to adequately allege a pattern of similar constitutional violations to plausibly support a claim for failure to train. As discussed above, the examples Plaintiffs cite show incidents not sufficiently similar to the allegation at issue. *See* ECF No. 1 ¶ 51; *see Connick*, 563 U.S. at 63 (holding district attorney could not have been put on notice that "specific training was necessary" to avoid a constitutional violation based on incidents that were not similar to the violation at issue); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required.").

Plaintiffs have not set forth sufficient facts to support the contention that the County has a policy, custom, or practice of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *See Trevino,* 99 F.3d at 918; *Monell*, 436 U.S. at 694; *Iqbal*, 556 U.S. at 678.

C.  **Bane Act**

Defendant next argues that Plaintiffs' Bane Act claim against the Defendants for deliberate indifference to Mr. Hightower's health and safety fails because "Plaintiffs have not alleged sufficient facts to show a violation of Plaintiff[s'] rights." ECF No. 9-1 at 8.

The Thomas Bane Civil Rights Act ("Bane Act") is codified in California Civil Code § 52.1. "The essence of a Bane Act claim is that the defendant, by the specified improper

means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'" *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791-92 (Ct. App. 2017) (quoting Cal. Civ. Code § 52.1). Violations of the federal and California Constitution are all Bane Act violations. *See* Cal. Civ. Code § 52.1(b). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022).

The Ninth Circuit has held that "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

Plaintiffs contend that their Bane Act claim should proceed because they have adequately alleged a violation of Mr. Hightower's "'clearly delineated and plainly applicable' right to be free from deliberate indifference to serious medical needs." ECF No. 11 at 15. However, as set forth above, the Court has concluded the Complaint fails to sufficiently state a plausible § 1983 deliberate indifference claim against the Defendants. Accordingly, Plaintiffs' alleged Bane Act violation against Defendants is dismissed. *See Reese*, 888 F.3d at 1044 (quoting *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013)) ("Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations.").

### D. Negligence and Loss of Consortium

Plaintiffs' fourth and fifth claims are for negligence against Does 1-14 and the County and loss of consortium against all Defendants. While Defendant initially argued that Plaintiffs' negligence and loss of consortium claims fail because Plaintiffs have not alleged a special relationship between Mr. Hightower and the Defendants, it withdrew this

argument in its Reply in Support of its Motion to Dismiss. ECF No. 12 at 2 n. 1. The Court therefore considers whether Plaintiffs have plausibly pleaded a negligence and loss of consortium claim against the Doe defendants only.

"In order to establish negligence under California law, a plaintiff must show that the defendant had a legal duty to use due care, that the defendant breached that duty, and that the breach was a legal or proximate cause of plaintiff's injury." *USAir v. United States Dep't of the Navy*, 14 F.3d 1410, 1412 (9th Cir. 1994). By statute, California imposes a duty on government employees who have custody of prisoners to provide medical care to the prisoners when needed. Cal. Gov't Code § 845.6. A government employee breaches that duty when a prisoner "is in need of immediate medical care and [the employee] fails to take reasonable action to summon such medical care." *Id.*

Here, Plaintiffs allege Does 1-14 breached their duty of care "by failing to take reasonable action to summon the medical care necessary to promptly treat the cancerous tumor growing in Mr. Hightower's lung." ECF No. 1 ¶ 87. Plaintiffs' negligence claim against Does 1-14 suffers from the same issue as the deliberate indifference claim—it is too conclusory to plausibly state a claim. Plaintiffs fail to provide any information about when or how much earlier Mr. Hightower should have received surgery. Further, Plaintiff has not alleged sufficient facts to state a claim that Defendants had actual knowledge from which to infer that a substantial risk of harm existed due to a delay in surgery and that this delay led to harm. As the Court found that Plaintiffs do not plausibly allege Section 1983 or Bane Act claims against the Defendants, Plaintiffs similarly fail to state a negligence claim against Does 1-14.

The elements of a loss of consortium claim are (1) a valid and lawful marriage between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was proximately caused by the defendant's act. *LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal. 4th 275, 284–85 (2012). As a loss of consortium claim requires a tortious injury, the claim is "unquestionably derivative" of Plaintiffs' negligence claims. *See id.* at 284. Because

Plaintiffs' negligence claim fails, there is no tortious injury, and Plaintiffs' loss of consortium claim fails. *See id.* at 284. Plaintiffs fail to state claims for negligence against Does 1-14 and loss of consortium against Does 1-30.

## IV.     LEAVE TO AMEND

Plaintiffs request leave to amend if the Court grants the County's motion to dismiss. ECF No. 11 at 19. District courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal quotation marks omitted). The deficiencies identified in the claims above are susceptible to being cured by the allegation of additional facts. Accordingly, the Court grants Plaintiffs leave to file a second amended complaint.

The Court cautions Plaintiffs that if a viable federal claim is not set forth in their amended complaint, the Court may decline supplemental jurisdiction over any remaining state claims. *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). ("[S]upplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it.") (citing 28 U.S.C. § 1367(a)).

## V.     CONCLUSION

For the above reasons, the Court **GRANTS** the County's motion to dismiss Claims 1, 2, and 3 of Plaintiffs' Complaint. The Court **DISMISSES** Claim 4 as to Does 1-14 and Claim 5 as to Does 1-30. Plaintiffs' amended complaint must be filed within **fourteen (14) days** of the date of this Order.

IT IS SO ORDERED.

Dated: March 14, 2025

_____
Hon. Robert S. Huie
United States District Judge